# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

TIMOTHY SIMMS,

        Petitioner,    :    Case No. 2:22-cv-474

  - vs -                        District Judge Edmund A. Sargus, Jr.
                                          Magistrate Judge Michael R. Merz

WARDEN, Grafton Correctional
  Institution,

                                       :

        Respondent.

## DECISION AND ORDER DENYING MOTION FOR RECUSAL

      This habeas corpus case, brought *pro se* by Petitioner Timothy Simms, is before the Court on Petitioner's Affidavit of Bias and Motion for Recusal seeking the recusal of Magistrate Judge Michael R. Merz from further involvement in this case (ECF No. 49).

**Applicable Legal Standard**

      Simms purports to bring this Motion under both 28 U.S.C. § 144 and 28 U.S.C. § 455. Two different standards apply to recusal under those two statutes.  Under 28 U.S.C. § 144 the party seeking disqualification must make an affidavit of personal bias or prejudice, accompanied by his counsel's certificate that the affidavit is made in good faith.  When a party is proceeding *pro se*, no counsel's certificate is required.  While the affidavit is directed in the first instance to the judicial officer sought to be disqualified, if it is timely and legally sufficient, recusal is mandatory;  the

1

truth of the facts set forth in the affidavit are not drawn in question, but only their legal sufficiency. 13A C. Wright, A. Miller, and E. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS 2D, §§ 3541, et seq., particularly § 3550.  To be legally sufficient under § 144, assertions in an affidavit must be definite as to time, place, persons, and circumstances. *Berger v. United States*, 255 U.S. 22 (1921).  Such detail is necessary to prevent abuse of § 144.  *Grimes v. United States*, 396 F.2d 331 (9th Cir. 1968).  One distinguished court has held that the appropriate level of detail is the same as required in a bill of particulars.  *United States v. Mitchell*, 377 F. Supp. 1312 (D.D.C. 1974)(Sirica, J.), *aff'd. sub. nom. United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976).

Under 28 U.S.C. § 455, different procedure is applicable:  no motion or affidavit is required, since the statute places a burden on a judge to disqualify himself or herself *sua sponte*.  There is no timeliness requirement.  *Roberts v. Bailar*, 625 F.2d 125, 128 (6th Cir. 1980). The Court, moreover, need not accept as true the factual statements in the affidavit if one is filed. *Phillips v. Joint Legislative Committee on Performance and Expenditure Review of Mississippi*, 637 F.2d 1014, 1019, n.6 (5th Cir. 1981).

The standard applied in evaluating recusal motions is an objective one.  "[W]hat matters is not the reality of bias or prejudice, but its appearance." *Liteky v. United States,* 510 U.S. 540, 548 (1994).  A federal judicial officer must recuse himself or herself where "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.  This standard is not based 'on the subjective view of a party,'" no matter how strongly that subjective view is held. *United States v. Nelson*, 922 F.2d 311, 319 (6th Cir. 1990), *cert. denied* 499 U.S. 981 (1991); *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990); *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989); *Browning v. Foltz*, 837 F.2d 276, 279 (6th

Cir. 1988).

A disqualifying prejudice or bias must be personal or extrajudicial. *United States v. Sammons,* 918 F.2d 592, 598 (6th Cir. 1990); *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1250 (6th Cir. 1989). That is, it "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also Youn v. Track, Inc.,* 324 F.3d 409, 423 (6th Cir. 2003), *citing Grinnell*, *supra*; *Bradley v. Milliken,* 620 F.2d 1143, 1157 (6th Cir. 1980), *citing Grinnell*, *supra*; *Woodruff v. Tomlin*, 593 F.2d 33, 44 (6th Cir. 1979) (citation omitted). The Supreme Court has written:

> The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias and prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for 'bias and prejudice' recusal, since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will not suffice. ... [J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion. See *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966). ... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

*Liteky v. United States,* 510 U.S. 540, 554-55 (1994); *see also Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002)(quoting the deep-seated favoritism or antagonism standard). Since the decision in *Liteky, supra,* "federal courts have been uniform in holding that § 455(a) cannot be satisfied without proof of extrajudicial bias, except in the most egregious cases." Flamm, Judicial Disqualification 2d § 25.99, *citing In re Antar,* 71 F.3d 97 (3rd Cir. 1995), *overruled on other grounds Smith v. Berg*, 247 F.3d 532, 534 (3rd Cir. 2001).

3

> Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits. This is an objective inquiry. A reasonable observer is unconcerned with trivial risks, which are endemic. If they were enough to require disqualification we would have a system of pre-emptory strikes and judge-shopping, which itself would imperil the perceived ability of the judicial system to decide cases without regard to persons. ... There are not enough political eunuchs on the federal bench to resolve all cases with political implications; anyway it would be weird to assign all political cases to the naifs while concentrating antitrust and securities cases in the hands of political sophisticates. ... Tenure of office, coupled with the resolve that comes naturally to those with independent standing in the community have led a 'political' judiciary in the United States to be more assertive in securing legal rights against the political branches than is the politically neutral, civil service judiciary in continental Europe.

*In re Mason*, 916 F.2d 384, 385-87 (7th Cir. 1990)(Easterbrook, J.)

**Application of the Standard Under 28 U.S.C. § 144**

Simms' purported Affidavit of Bias is not an affidavit at all in that it was not sworn to before a notary. Nor is it in the form required for a declaration under penalty of perjury in place of an affidavit as prescribed by 28 U.S.C. § 1746.

Simms' purported Affidavit of Bias is not timely. This case was filed in June 2022. Simms' purported facts are assertedly drawn from the LEXIS database which has apparently been available to Petitioner since before he filed and has not changed since he filed except to the extent it reports additional cases to which I have been assigned since then.

Simms' purported Affidavit is not definite as to time, place, persons or circumstances. He reports only on his interpretation of the results of a LEXIS database search without any discussion of the circumstances of any other case.

4

With respect to this case, he interprets the instances in which Judge Sargus has recommitted the case after objections by Simms as a "rejection" of the Report. Not so. The uniform practice in this District is that recommittals after objection occur only at the request of the undersigned so that he can address those objections on the merits. Simms claims the undersigned is showing bias in favor of the State of Ohio even now in this case: "Magistrate Merz appears to be effecting a win for the State of Ohio by attrition by refusing to commence review and issuance of a fifth R&R." (Motion, ECF No. 49, PageID 1623). Not so. The case has not been recommitted since the last set of objections, but is pending before Judge Sargus for resolution.

Simms offers no supposed extrajudicial source for my asserted bias and there is none. I have no personal, non-professional relationship now or at any time during my judicial career with any attorney or non-lawyer in the Office of the Attorney General who represents the State in these cases.

I have not attempted to replicate Petitioner's database search because I do not know what search parameters he used. I only very rarely receive unanimous consent from the parties in habeas corpus cases, so the final decisions are made by District Judges upon my reports and recommendations.[1] Simms claims the only habeas case in which I have ever decided in favor of a Petitioner is the *Gillispie* case cited in the footnote. From memory alone I can recall recommendations favorable to petitioners in *Zuern v. Tate*, Case No. 1:92-cv-00771 and *Depew v. Ohio*, 1:94-cv-00459 (both capital cases) and *Hartman v. Ohio Adult Parole Authority,* 3:19-cv-00003.

It is correct that I have recommended dismissal in most of the habeas corpus cases referred

---

[1] The one habeas decision in favor of a petitioner which Simms acknowledges is *Gillispie v. Timmerman-Cooper*, 835 F. Supp. 2d 482 (S.D. Ohio 2011), in which there was unanimous consent under 28 U.S.C. § 636(c).

to me. This is not because I have any personal bias in favor of the State of Ohio or any of its usual actors in habeas corpus cases. Rather, it is because of the state of habeas corpus law.

Federal habeas corpus only became available to state prisoners after the Civil War; Congress feared retaliation against federal officers carrying out post-Civil War federal legislation. It remained largely confined to jurisdictional issues until *Brown v. Allen*, 344 U.S. 443 (1953), which opened habeas courts to litigation of all constitutional claims even if they had been considered in the state courts. Then during the Chief Judgeship of Earl Warren many of the criminal justice related rights in the Bill of Rights were "incorporated" into the United States Constitution by way of the Due Process Clause of the Fourteenth. With respect to the Sixth Amendment, see, for example, *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) (trial by jury in criminal cases); *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) (compulsory process); *Klopfer v. North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967) (speedy trial); *Pointer v. Texas,* 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965) (right to confront adverse witness); *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (assistance of counsel); *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)(ineffective assistance of counsel).

The Supreme Court could not itself review all state cases in which constitutional claims were raised, so in 1963 the Court greatly expanded the habeas corpus power of District Courts. See *Townsend v. Sain*, 372 U.S. 293, 313 (1963)(expanding broadly the categories of cases in which habeas courts could grant an evidentiary hearing) and *Fay* v. *Noia*, 372 U.S. 391 (1963)(federal claims can be barred by procedural default in raising them in state courts only if the State can show they were deliberately bypassed).

The history of habeas corpus since Warren Burger succeeded Earl Warren can best be seen

as a broad and persistent effort by the Supreme Court and eventually Congress to roll back the habeas remedy expanded by the Warren Court. In *Stone v. Powell,* 428 U.S. 465 (1976), the Court made Fourth Amendment claims non-cognizable in habeas if the petitioner had been given a full and fair opportunity to litigate those claims in state court[2]. In *Wainwright v. Sykes*, 433 U.S. 72 (1977), the Court weakened *Fay* and reintroduced procedural default as a bar to habeas claims. Then in 1996 Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). This statute reduced the constitutional precedent on which a habeas court could rely to "clearly established" holdings of the Supreme Court. It required deference to state court decisions on the merits unless they were "unreasonable." It adopted for the first time a statute of limitations for habeas cases (one year) and a bar on second or successive habeas petitions unless allowed by the court of appeals on a case-by-case basis. Finally, in *Cullen v. Pinholster,* 563 U.S. 170 (2011), the Supreme Court essentially eliminated evidentiary hearings in habeas by holding that a habeas court must decide factual questions on the basis of the record made in the state courts. That is the legal context in which I have considered habeas corpus cases throughout my federal judicial career (1984-2024).

Federal judges are required by their oath "to administer justice **according to law**." This means for example that a completely meritorious habeas claim filed eleven months after the conviction became final must be dismissed with prejudice as barred by the statute of limitations. That is what the law requires. We are not free to do justice as we see it in a habeas case, but only as the law allows it.

I sincerely believe that I have followed the law faithfully in adjudicating habeas corpus

---

[2] Since most States follow federal practice in allowing a separate motion to suppress proceeding pre-trial, Fourth Amendment issues have largely disappeared from habeas cases. If they are pleaded, they must be dismissed as barred by *Stone*.

7

cases, without any bias in favor of the State of Ohio and that any perceived imbalance in outcomes of these cases is required by law. That proposition can be tested by examining how many times District Judges or the Court of Appeals have rejected my analysis in favor of a petitioner, analysis which Simms does not offer.

    I decline to recuse myself in this case.

July 19, 2024.

s/ *Michael R. Merz*<br>
United States Magistrate Judge